[Cite as *RCI Asset Mgt., Inc. v. Cerni Motor Sales, Inc.*, 2012-Ohio-3007.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RCI ASSET MANAGEMENT, INC. | ) | CASE NO. 10 MA 115 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CERNI MOTOR SALES, INC., et al. | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 09 CV 2

JUDGMENT:        Affirmed.

APPEARANCES:

For Plaintiff-Appellee:        Atty. Bryan M. Ridder
Atty. Alan R. Kretzer
20 Federal Plaza West
Suite M6
Youngstown, Ohio 44503

For Defendant-Appellant:        Atty. Stuart A. Strasfeld
Atty. David S. Barbee
Atty. Elizabeth H. Farbman
Roth, Blair, Roberts, Strasfeld
  & Lodge
100 Federal Plaza East, Suite 600
Youngstown, Ohio 44503

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: June 29, 2012

[Cite as *RCI Asset Mgt., Inc. v. Cerni Motor Sales, Inc.*, 2012-Ohio-3007.]
WAITE, P.J.

{¶1}   The dispute in this appeal is whether the trial court correctly returned a $25,000 deposit made by Appellee RCI Asset Management, Inc. ("RCI"), that had been paid to Appellant Cerni Motor Sales, Inc. ("Cerni Motors"), for the purchase of 50 used trucks.  The sale never took place, leading to RCI to file a lawsuit in the Mahoning County Court of Common Pleas against both Cerni Motors and Terry Eddy ("Eddy"), an automobile broker who arranged the sale.  One of the claims in the lawsuit was for the return of the deposit based on the theory of unjust enrichment. The trial court granted partial summary judgment based primarily on the deposition testimony of John P. Cerni, II, the president of Cerni Motors.  The record indicates that there was no meeting of the minds of the parties regarding the purpose or disposition of the deposit.  The trial court correctly ruled that the deposit should be returned.  Appellant's assignments of errors are overruled and the judgment of the trial court is affirmed.

## History of the Case

{¶2}   In May and June of 2008, there were discussions between RCI, Cerni Motors, and Eddy regarding the sale of 50 trucks.  Each truck was potentially worth over $26,000, and the total sale would have been worth over $1 million.  At no time did RCI or Cerni Motors ever directly communicate with each other about this sale. Each side was communicating only with Eddy.  At the end of May or early June 2008, RCI made a wire transfer of $25,000 to Cerni Motors as a deposit on the potential sale of the trucks.  The sale did not take place, and RCI soon took measures to have

its deposit returned, to no avail. There does not appear to be any dispute between the parties on these basic facts.

{¶3} On January 2, 2009, RCI filed a three-count complaint against Cerni Motors and Eddy alleging breach of contract, conversion, and breach of warranty. On December 8, 2009, RCI amended its complaint to add a claim of unjust enrichment against Cerni Motors for return of the $25,000 deposit. Cerni Motors filed an answer to the amended complaint; Eddy did not. On January 27, 2010, RCI filed a motion for summary judgment on the unjust enrichment claim. On March 18, 2010, the court awarded RCI default judgment on its claims against Eddy. This constituted a final appealable order and was not appealed.

{¶4} On June 30, 2010, the court awarded summary judgment to RCI on the unjust enrichment claim against Cerni Motors. Final appealable order language was not contained in the judgment entry. A notice of appeal was filed on July 14, 2010. On August 4, 2010, we gave the parties 30 days to obtain a final appealable order. On September 17, 2010, the court amended the judgment entry to include the "no just reason for delay" language required by Civ.R. 54(B) to render the judgment as a final appealable order. We then allowed the appeal to proceed. Both Cerni Motors and RCI have filed briefs on appeal. There are three assignments of error, all of which allege that the trial court should not have granted summary judgment. Thus, they will be treated together.

## Assignment of Error No. 1

The trial court erred in granting the Plaintiff-Appellee's Motion for Summary Judgment when it determined that Terry Eddy was not acting as an agent for Plaintiff-Appellee, RCI Asset Management, Inc.

## Assignment of Error No 2

The trial court erred in granting the Plaintiff-Appellee's Motion for Summary Judgment when it determined that there was no meeting of the minds between the parties to the underlying sales transaction.

## Assignment of Error No. 3

The trial court erred in granting the Plaintiff-Appellee's Motion for Summary Judgment when it determined that Defendant-Appellant must return the entire deposit to the Plaintiff-Appellee.

**{¶5}** This appeal challenges an award of summary judgment on an unjust enrichment claim. An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241, (1996). Before summary judgment can be granted, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary

judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the nonmoving party. *Id.*

**{¶6}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, in the face of a properly supported motion for summary judgment, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

**{¶7}** RCI relied on the theory of unjust enrichment as the basis for seeking the return of its $25,000 deposit in a failed transaction for the purchase of 50 trucks. In Ohio, unjust enrichment is a claim sounding in quasi-contract that arises out of the obligation created by law on a party holding some benefit that he is not justly and equitably entitled to retain. *Hummel v. Hummel*, 133 Ohio St. 520, 527, 14 N.E.2d 923 (1938). The equitable theory of unjust enrichment is not available for use where the relationship of the parties is governed by an express contract. *Weiper v. W.A. Hill & Assoc.*, 104 Ohio App.3d 250, 262, 661 N.E.2d 796 (1st Dist.1995). To prove

unjust enrichment, the plaintiff must establish: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). Unjust enrichment entitles a party only to restitution of the reasonable value of the benefit conferred. *St. Vincent Med. Ctr. v. Sader*, 100 Ohio App.3d 379, 384, 654 N.E.2d 144 (6th Dist.1995).

**{¶8}** We have allowed unjust enrichment to be used to recover a deposit where there is no meeting of the minds of the parties regarding the deposit itself. *Sammartino v. Eiselstein*, 7th Dist. No. 08 MA 211, 2009-Ohio-2641, ¶14-15. *Sammartino* involved a deposit to purchase real property, but its reasoning is not limited to that type of transaction and is consistent with earlier holdings from this Court. "[P]laintiff's action appears to be one for money had and received, and his right to recover the money deposited with defendant is grounded on the claim that there was no subsisting contract between him and the defendant. Under these circumstances, the defendant could not refuse the return of the amount of the deposit, as such refusal would result in his unjust enrichment." *Massaro v. Bashara*, 91 Ohio App. 475, 477-478, 108 N.E.2d 850 (7th Dist.1951), citing *Hummel, supra.*

**{¶9}** Appellant contends that there was an oral contract for RCI to buy the trucks, and that summary judgment should not be granted based on conflicting material facts as to the oral contract. Despite Appellant's reference to various documents in the record that discuss the failed sales transaction, there is nothing in

the record showing that RCI knew about or agreed to the supposed terms that Cerni Motors has alleged in this case. There most certainly is nothing in the record that would show that there was an agreement reached regarding the deposit itself, and Appellant admitted this at oral argument. Without an agreement regarding the deposit, RCI may rely on the theory of unjust enrichment to seek the return of the money. Hence, since this matter involves only the deposit and not the entire underlying transaction, we overrule Appellant's second assignment of error without any further analysis.

{¶10} Appellant's argument in his first assignment of error is based on the theory that Cerni Motors had come to terms with Eddy, that Eddy communicated these terms to RCI, and that Eddy was acting as an agent of RCI in some capacity, whether directly or as a broker. The question of whether Eddy was RCI's agent is the most problematic part of Appellant's argument. Appellant apparently believes that Eddy had negotiated the forfeiture of the $25,000 deposit, and that RCI was charged with any agreement Eddy had reached because he was RCI's agent. The main parts of the record that Cerni Motors relies on to prove this point are: (1) Eddy's pro se answer to the original complaint; (2) Cerni Motors' answer to the amended complaint; (3) the deposition transcript of Phillip Todd Ekeroth, the sole owner of RCI; (4) unsigned invoices for the trucks; (5) affidavits from Charles Schneider (a salesman working for Cerni Motors) and James D. Carello (president of Regional International Corporation); and (6) an email supposedly from Eddy. None of this evidence creates a genuine issue of material fact in this case.

**{¶11}** Dealing first with Eddy's answer to RCI's first complaint, we question whether it has any evidentiary value in this appeal. A party cannot use its own pleadings to establish a material fact in its case: "A pleading is not admissible into evidence at a hearing to prove a party's allegations and must not be considered as evidence by the court." *Felton v. Felton*, 79 Ohio St.3d 34, 43, 679 N.E.2d 672 (1997). Similarly, a party cannot rely on a third party's pleadings to prove its case. Only the pleadings of an opposing party may be relevant as an admission against that party or for impeachment purposes, and the relevance of the pleadings stops there. *Hocking Valley Ry. Co. v. Helber*, 91 Ohio St. 231, 245, 110 N.E. 481 (1915). In this case, Eddy did not enter a pleading to the unjust enrichment claim in the amended complaint. In fact, default judgment was granted against Eddy for failure to respond to the amended complaint. There is nothing in Eddy's original answer to RCI's complaint, or in his failure to respond to the amended complaint, that could be used as evidence in support of Appellant's position in this appeal.

**{¶12}** Turning to Cerni Motors' answer to the amended complaint, the same principles mentioned earlier apply. Cerni Motors cannot rely on its own pleadings as proof of its allegations in this case. *Felton*, supra. Further, Cerni Motors' answers were directly contradicted and disavowed in the deposition of Mr. John P. Cerni, II, who is the president, general manager, and authorized representative of Cerni Motors in this case. Mr. Cerni admitted in his deposition testimony that neither he nor anyone else from Cerni Motors had spoken to or received correspondence from anyone at RCI prior to receiving a letter asking for return of the deposit. (Cerni

Depo., p. 22.) He agreed that RCI had never consented to any terms of the proposed agreement to buy the trucks. (Cerni Depo., p. 33.) He acknowledged that, as far as he knew, RCI never agreed that they would lose the deposit if the sale did not take place:

Q  Do you have any knowledge as to what RCI's understanding of the deposit was?

A .  No, sir.

(Cerni Depo., p. 34.)

{¶13} Mr. Cerni also testified that Eddy was not acting as an agent for RCI and that if Eddy was acting as an agent, it was as Cerni Motors' agent:

Q  $2,000 to Terry Eddy to reimburse him for his expenses.

A  Yes, sir.

Q  Explain that to me.

A  Terry Eddy came to New York, and said that he had incurred $2,000 worth of expenses to consummate this deal for RCI, and he expected some of the deposit.

Q  Did you -- you stated in your answer that Terry Eddy represented that he was an agent for RCI.  Why would you pay Eddy these sums --

A  I don't think --

Q  -- if he was working for someone else?

A  Did I say he was an agent?

Q  I believe so.

MR. STRASFELD:  Uh-huh.

A  All right.  Terry Eddy, as far as I know, is a [sic] owner of a business that sells used trucks, and he was selling used trucks to RCI.  I don't know that he's an agent for RCI.  I, I don't know that he is representing RCI in this case.

I, if I called him an agent, he's an agent for himself, because he obviously was going to make a profit on this deal, too.

Q  Okay.  Did he give you any sort of an invoice for these expenses?

A  I believe I have an invoice for those, yeah.

Q  Do you have that with you?

A  No.

Q  And it says to reimburse him for his expenses.  What's your understanding of the word "reimburse"?

A  Pay back.

Q  For an existing obligation that you owe to someone?

A  Sure.

(Cerni Depo., pp. 44-46.)

{¶14} Cerni Motors' own evidence clearly establishes that Appellant did not believe that Eddy was working for RCI or was an agent of RCI.

{¶15} Cerni Motors also cites the deposition testimony of Phillip Todd Ekeroth, president of RCI, for the proposition that Eddy was RCI's agent, but nothing in the deposition supports that conclusion.  Ekeroth testified that Eddy acted as Cerni Motors' agent.  (Ekeroth Depo., p. 15.)  He testified that his sole contact with anyone from Cerni Motors was only related to the recovery of his deposit.  (Ekeroth Depo., p. 14.)  He testified that Eddy represented himself as a seller's agent, and specifically as Cerni Motors' agent.  (Ekeroth Depo., p. 25.)  He testified that he negotiated with Eddy as the seller's broker in some transactions subsequent to the failed transaction in dispute in this case.  (Ekeroth Depo., p. 26.)  Nothing in this deposition could be reasonably interpreted as any type of proof that Eddy was acting as RCI's agent at any time.

{¶16} Cerni Motors' reference to five invoices as evidence of an agreement is not well taken.  Each invoice was for $267,500 for 10 trucks each.  (3/3/10 Response, Exh. B-B.)  Each invoice contained this notice in bold type:  "THIS ORDER IS NOT VALID UNLESS SIGNED AND ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE."  None of the invoices have a signature from an RCI representative, and in fact, the signature line is blank.

**{¶17}** Cerni Motors also attempts to rely on two affidavits, one from Charles Schneider (a salesman working for Cerni Motors), and another from James D. Carello (president of Regional International Corporation), to show that Eddy was acting as RCI's agent. Even if these affidavits could be read in a matter to support Cerni Motors' claims, a party cannot rely on contradictory affidavits to create an issue of fact when the party's own deposition testimony has proven otherwise. "[A] non-movant cannot defeat a summary judgment motion with an affidavit that *directly contradicts* prior deposition testimony *unless explanation is given* for the contradiction." (Emphasis sic.) *Kramer v. Estate of Frank Anzellotti*, 7th Dist. No. 03 MA 217, 2004-Ohio-4906, ¶52, citing *Kollmorgan v. Raghavan*, 7th Dist. No. 98 CA 123, 2000 WL 652429 (May 05, 2000) and *Fiske v. Rooney*, 126 Ohio App.3d 649, 711 N.E.2d 239 (4th Dist.1998). The deposition testimony of Mr. Cerni, cited earlier, completely contradicts any assumptions made in either of the two affidavits on which Cerni Motors now attempts to rely regarding whether Eddy was acting as the agent of RCI, and there is no explanation in the record for the contradiction.

**{¶18}** Finally, Cerni Motors relies on an email sent on June 4, 2008 from Eddy to Charlie Schneider dealing with the failed sales transaction. Nothing in this email can be read as proof that Eddy was acting as RCI's agent. At most, the email may show that Eddy was in contact with RCI about the transaction, but not that he was RCI's agent.

{¶19} Because there is no proof in the record that could reasonably be interpreted to support the conclusion that Eddy was acting as RCI's agent, Appellant's first assignment of error fails and is overruled.

{¶20} In the third assignment of error, Cerni Motors contends that $7,500 should be deducted from the $25,000 deposit because Cerni Motors paid this amount to Charles Schneider, an employee of Cerni Motors who was anticipating making this amount as a commission on the sale. It is unclear why Cerni Motors apparently paid this amount to Schneider when the record reveals that Cerni Motors never actually acquired the trucks and no sale of the trucks took place. Mr. Cerni stated that he did not purchase the trucks for resale to RCI once he determined that Eddy and RCI were backing out of the deal. (Cerni Depo., p. 28.) Schneider, although an employee of Cerni Motors, is not an individual party to this action and has made no personal claim for any type of loss. Cerni Motors also failed to file a counterclaim on any theory of recovery relating to possible expenses it may have incurred in the failed transaction.

{¶21} Cerni Motors agrees that unjust enrichment allows for the restitution of the reasonable value of benefits conferred. *Sammartino v. Eiselstein*, 7th Dist. No. 08 MA 211, 2009-Ohio-2641, ¶14, citing *St. Vincent Med. Ctr. v. Sader*, 100 Ohio App.3d 379, 384, 654 N.E.2d 144 (6th Dist.1995). There is no need to speculate about the reasonable value of the benefits conferred in this case. The record reflects that the benefit conferred was money, and the value is $25,000. Whether or not Cerni Motors made a voluntary payment to one of its employees for a transaction that

was never consummated does not change the value of the benefit conferred from RCI to Cerni Motors. RCI deposited the entire $25,000 with Cerni Motors and did not receive any reciprocal benefit in any amount in return. Thus, the value of the benefit conferred remains $25,000, and that amount should be returned to RCI.

{¶22} The record in this case supports the trial court's judgment. There is no genuine issue of material fact about the deposit or about the lack of any agreement as to the disposition of the deposit. There is no genuine issue of material fact as to whether Eddy was acting as the agent of RCI. There is no genuine dispute that RCI gave Cerni Motors a deposit of $25,000 for a potential sale that was never finalized and never took place. Under the circumstances, RCI is entitled to have its deposit returned on the theory of unjust enrichment. Appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, J., concurs.